FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2025 JUN 24 PM 12: 21

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY EDWARDS,<br><br>Defendant. | 8:23CR124<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Lesley A. Woods, United States Attorney, and Donald J. Kleine, Assistant United States Attorney, and defendant, JEFFREY EDWARDS, and P. Shawn McCann, counsel for defendant, as follows:

# I
## THE PLEA

A.  **CHARGE(S) & FORFEITURE ALLEGATION(S).**

Defendant agrees to plead guilty to Counts I – IX of the Indictment, which charge violations of Title 18, United States Code, Section 1347 and Title 18, United States Code, Section 2.

B.  In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1.  The United States will move to dismiss Count(s) X – XVI and the Forfeiture Allegation of the Indictment at the time of sentencing.

1

## II
## NATURE OF THE OFFENSE

A.  ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

Counts I - IX

1. Defendant knowingly executed and aided and abetted a scheme or artifice to defraud a health-care benefit program by means of false or fraudulent pretenses, representations, or promises.
2. The false or fraudulent pretenses, representations, or promises related to a material fact.
3. Defendant acted willfully and intended to defraud.
4. Defendant did so in connection with the delivery of or payment for health-care benefits, items, or services.

B.  ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

### *Claims for Services Not Rendered*

1. At all relevant times, Jeffrey Edwards was a Doctor of Medicine, licensed to practice in the State of Nebraska. Edwards owned and operated Anesthesia Professionals P.C. d/b/a Medical Pain Relief Clinic (MPRC), located in Omaha, Nebraska. Edwards asserted that his primary specialty was anesthesiology and secondary specialty was interventional pain management.
2. Edwards was an approved Medicare provider since 1993 and an approved Nebraska Medicaid provider since 1993.
3. Edwards registered with the DEA under the provisions of the Controlled Substances Act as a practitioner and was assigned a DEA registration number. Edwards's DEA registration authorized him to write prescriptions for controlled substances on Schedules II through V.

4. Beginning on or about 2010, and continuing until on or about February 2019, Edwards treated numerous patients at MPRC. During this time period, Edwards frequently traveled outside the District of Nebraska.

5. While traveling outside the District of Nebraska, Edwards caused and aided and abetted unsupervised, unlicensed, and medically untrained MPRC staff to meet with MPRC patients, review charts with patients, obtain patient vitals, and issue a prescription for controlled substances to the patient as needed. MPRC staff would document the patient visit in the paper medical record and later enter the information into the MPRC electronic healthcare record program (EHR). Staff were directed to use Edward's user identification number in the EHR program making it appear that Edwards completed the medical office visit.

6. After a patient visit, Edwards caused and aided and abetted MPRC staff to submit healthcare claims to Medicare, Nebraska Medicaid, and Iowa Medicaid for these unsupervised patient visits. The submitted claims falsely represented that MPRC patients received a "nurse" visit, when in fact, as Edwards knew, the patients met with unsupervised, unlicensed, and medically untrained MPRC staff.

7. In addition, patients who were issued prescriptions for controlled substances by the unsupervised, unlicensed, and medically untrained MPRC staff caused pharmacies to submit fraudulent claims to Medicare, Nebraska Medicaid, and Iowa Medicaid for unauthorized and illegally issued prescriptions.

### *Claims for non-FDA Approved Botox*

8. The United States Food and Drug Administration (FDA) is the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et.seq. (FDCA). The FDA's responsibilities under the FDCA include regulating the manufacture, labeling, and distribution of all drugs and drug components shipped or received in interstate commerce and foreign commerce. FDA must approve prescription drugs before the drug can be legally sold, distributed, prescribed, or dispensed in the United States.

9. MPRC patients received injections of Botox®, which is a prescription drug under 21 U.S.C. §§ 321(g)(l) and 353(b).

3

10. Allergan is the only authorized manufacturer of Botox®. Botox® is purchased directly from Allergan or through one of Allergan's authorized wholesalers.

11. Between 2011 and December 2018, Edwards caused and aided and abetted MPRC staff to purchase foreign-sourced Botox® through pharmacies located in Europe. The foreign-sourced Botox® was then administered to MPRC patients for payment.

12. On or about August 4, 2017, and September 19, 2017, packages addressed to Edwards were taken from the mail-stream by the Department of Homeland Security, Customs and Border Patrol, at the international mail facility located at the Port of Entry, JFK Airport, Jamaica, NY. The packages were mailed from Europe. The packages were intended for delivery to MPRC. The packages each contained ten (10) packages/vials of foreign-sourced Botox® that was not FDA-approved.

13. On or about August 24, 2017, and September 19, 2017, the FDA sent Edwards letters stating the foreign-sourced Botox® was not an FDA-approved drug that could be legally sold, distributed, prescribed, or dispensed in the United States. In spite of receiving the FDA notice, Edwards continued to direct MPRC staff to purchase and receive in interstate commerce unapproved prescription drugs (specifically, the foreign-sourced Botox®), which prescription drugs were administered to MPRC patients for pay.

14. The foreign-sourced Botox® was misbranded within the meaning of (a) 21 U.S.C. § 352(f)(1), in that its labeling failed to bear adequate directions for use; and (b) 21 U.S.C. § 353(b)(4)(A), in that it was a prescription drug whose label failed to bear the symbol "Rx only" prior to dispensing. Additionally, the foreign-sourced Botox® had different labeling (such as different warnings) than the Botox® that was FDA approved for the United States market.

### *The Counts*

15. While operating MPRC, fraudulent claims caused to be submitted by Edwards to Medicare, Nebraska Medicaid, Iowa Medicaid, and BCBS Nebraska include, but are not limited to, the following:

4

| Count | Patient | Approximate Date Claim Submitted | Type of Claim | Approximate Amount Claimed |
|---|---|---|---|---|
| I | H.P. | February 15, 2018 | Office Visit | $100 |
| II | M.S. | November 19, 2018 | Office Visit | $100 |
| III | A.S. | December 27, 2018 | Office Visit | $100 |
| IV | H.P. | February 15, 2018 | Schedule II Prescription | $6 |
| V | M.S. | November 19, 2018 | Schedule II Prescription | $61 |
| VI | A.S. | December 27, 2018 | Schedule II Prescription | $213 |
| VII | H.P. | June 28, 2018 | Non-FDA-Approved Drug | $4,640 |
| VIII | K.D. | July 30, 2018 | Non-FDA-Approved Drug | $4,640 |
| IX | A.H. | October 18, 2018 | Non-FDA-Approved Drug | $4,640 |

***Loss Due to Fraudulent Claims***

16. While operating MPRC, Edwards caused to be submitted fraudulent claims totaling at least $455,893 to Medicare, Nebraska Medicaid, Iowa Medicaid, and Blue Cross Blue Shield of Nebraska (BCBS) Nebraska, resulting in a loss to Medicare, Nebraska Medicaid, Iowa Medicaid, and BCBS of Nebraska as follows:

| Program | Foreign Botox | Payments | Total Actual Loss |
|---|---|---|---|
| Medicare Part B | At Least $21,314 | $8,069.24 | At Least $29,383 |
| Medicare Part C | At Least $1,126 | $433.87 | At Least $1,559 |
| Medicare Part D | $0.00 | $65,765.89 | $65,765.89 |
| NE Medicaid | At Least $11,402 | $49,456.53 | At Least $60,858 |
| IA Medicaid | At Least $7,060 | $14,343.94 | At Least $21,403 |
| BCBS Nebraska | At Least $14,494 | $9,222.94 | At Least $23,716 |
| Total | At Least $55,396 | $147,292.41 | At Least $202,684.89 |

## III
## PENALTIES

A.  COUNTS I - IX. Defendant understands that the crimes to which defendant is pleading guilty each carries the following penalties:

1.  A maximum 10 years in prison;
2.  A maximum $250,000 fine;
3.  A mandatory special assessment of $100 per count; and
4.  A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.
5.  Possible ineligibility for certain Federal benefits.

## IV
## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V
## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.  **Base Offense Level** - The parties agree that the defendant's base offense level under U.S.S.G. § 2B1.1 is 6.
2.  **Specific Offense Characteristics – Loss** - The parties agree that for United States Sentencing Guideline purposes, the offense involved intended loss of at least $450,000 and actual loss of at least ~~$202,686.~~ *$202,684.89*   06/24/2025

6

3. **Acceptance of Responsibility** - If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

4. Defendant agrees to abandon all evidence and property seized or obtained by law enforcement as part of its investigation and further agrees said evidence and property may be destroyed or disposed of by the government.

5. The parties have no further agreement regarding application of the United States Sentencing Guidelines.

B. <u>ACCEPTANCE OF RESPONSIBILITY</u>.

Notwithstanding paragraph A above, the United States will <u>not</u> recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

C. <u>ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553</u>.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D. <u>CRIMINAL HISTORY</u>.

The parties have no agreement concerning the defendant's Criminal History Category.

E.   "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

F.   RECOMMENDATION REGARDING CUSTODY.

The United States will recommend that defendant be sentenced to within the advisory guideline range as calculated by the Court at the time of sentencing.

G.   RESTITUTION

Defendant agrees to the following regarding Restitution:

   a. The amount of restitution ordered by the Court shall include all relevant conduct, including, but not limited to, all charged and uncharged criminal conduct alleged in the Indictment, and not limited to the count(s) of conviction.

   b. Defendant also shall pay the Special Assessment of $100 per count of conviction by submitting a satisfactory form of payment to the Clerk of the Court *prior to* appearing for the sentencing proceeding in this case.

   c. Restitution and Assessment payments shall be made payable to the "U.S. District Court Clerk."

   d. The District Court Clerk will subsequently disburse Defendant's restitution payments to the following victim(s) for losses in at least the following amounts:

| Program | Total |
|---|---|
| Medicare Part B | At Least $29,383 |
| Medicare Part C | At Least $1,559 |
| Medicare Part D | $65,765.89 |
| NE Medicaid | At Least $60,858 |
| IA Medicaid | At Least $21,403 |
| BCBS Nebraska | At Least $23,716 |
| **Total** | **At Least $202,684.89** |

8

e. Court imposed monetary penalties are *due immediately* and subject to *immediate* enforcement by the United States. 18 U.S.C. § 3613.

f. Any Court ordered schedule for restitution payments is merely a *minimum* payment obligation, and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (*see* 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§3613, 3664(m)).

g. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

h. Defendant will provide all of defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

i. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

j. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence, and will execute any Release for such information upon request.

k. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the

9

financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

l. Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

m. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Defendant promises that Defendant will make no such transfers in the future.

n. If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

## VI

### DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

    (a) As provided in Section I above, (if this is a conditional guilty plea); and

    (b) A claim of ineffective assistance of counsel.

    (c) A right to file a motion under Section 3582(c)(1)(A);

      1. the general right to file a compassionate release motion;

      2. the right to file a second or successive such motion; or

      3. the right to appeal the denial of a compassionate release.

  The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

    (a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

    (b) The right to seek post-conviction relief based on ineffective assistance of counsel.

  If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

  Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

  In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
### SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it. Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
LESLEY A. WOODS
United States Attorney

_6/24/2025_
Date

_____
DONALD J. KLEINE
ASSISTANT U.S. ATTORNEY

_6/20/25_
Date

_____
JEFFREY EDWARDS
DEFENDANT

_6/20/25_
Date

_____
P. SHAWN McCANN
COUNSEL FOR DEFENDANT